# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MASSACHUSETTS

NEW YORK STATE ELECTRIC &
GAS CORPORATION,
                    Plaintiff

            v.

FIRST ENERGY CORPORATION,
                    Defendant

*MBO - 05 - 10295 - RGS*

## EMERGENCY MOTION FOR RELIEF FROM DOCUMENT SUBPOENA

### BACKGROUND

The moving party, ███████████████████████ Massachusetts corporation with its office in Watertown, Massachusetts, was served ███████ copy of which is attached hereto as exhibit 1 and made a part of this motion) issued by the United States District Court in Boston, Massachusetts requesting i████████████████████ Costello, Cooney & Fearon, PLLC, 205 South Salina Street, Syracuse, NY 13202 on behalf of the defendant. The subpoena was issued as a result of litigation between the captioned parties in United States District Court, Northern District if New York, Case Number 3:03 CV 0438. The moving party seeks to modify the3 subpoena on the grounds th██████████████████████████████████ with the subpoena, th████████████████████████████████████████████████

### MOTION

META respectfully moves this court, pursuant to Fed. R. Civ. P. 45 (c), to modify the subpoena

by:

*Pending further order of court the period to produce is extended to August 26, 2005.*

*[signature] J 8/11/05*

(1)

1. Extending the date for production █████████████████████

2. █████████████████████████████████████████████████
████████████████████████████████████████████████████

3. Ordering that META ████████████████████████████████████
████████████████

dated July 1, 1995 (a copy of the pertinent provisions of this agreement is attached hereto as exhibit 2 and

made a part of this motion) pending either authority received from EPRI to release such documents or an

order of a court of competent jurisdiction.

## ARGUMENT

The Documents:  ████████████████████████████████████



████████████████████████████SEG is the plaintiff in the underlying action. The

documents sough███████████████████████████████████Many of the

documents that are the subject matter of the subpoena are intermingled with documents pertaining to

other entities and would be irrelevant to the subpoena. It will take several employees of META

substantial time to locate, review and segregate the requested documents. META would ne████████████

████████████ be able to comply.

Confidentiality:        META has also performed work on many projects on behalf EPRI that were

conducted on NYSEG sites or were funded by NYSEG or both. EPRI is a non-profit research and

development organization in California that is funded by electric energy companies. META has

performed services pursuant to a number of project agreements which all were subject to the Master

Agreement with EPRI. ██████████████████████████████████n

█████████████████████████████████████████████████

Since the subpoena includes requests that include likely confidential documents, META risks violating its

obligation under the agreement if it releases EPRI-related documents that relate to NYSEG. Article 10.3 of this agreement provides that in the event such documents are subpoenaed, META must notify EPRI in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ s. META noticed EPRI under Article 10.3 by notification dated August 9, 2005 and sent by overnight delivery. (a copy of this correspondence is attached hereto as exhibit 3 and made part of this motion).

Insufficient Time.        The subpoena to META was served on July 26, 2005 while the employee of META who would handle the subpoena was away on business. The employee, David Mauro, became aware of the subpoena on August 2, 2005. He left a message for his usual attorney, Robert Rosenblum, Esq. Attorney Rosenblum was away on vacation and Attorney Coren spoke with and agreed to represent META on August 4, 2005. Upon receiving the subpoena and related documents by facsimile on August 5, 2005, Attorney Coren telephoned Attorney Ferrara and explained the situation to Attorney Ferrara's secretary. On Monday, August 8, 2005, not having received a return call, Attorney Coren sent by facsimile a letter to Attorney Ferrara. (a copy of the pertinent provisions of this agreement is attached hereto as exhibit 4 and made a part of this motion) No response has been received. META has responded diligently upon Mr. Mauro becoming aware of the subpoena but has insufficient time in which to respond to the subpoena.

Attorney Fees.        The service of the subpoena, the issue of confidentiality and non-response of Attorney Ferrara or his office has caused META to incur attorney fees including the preparation of this motion and related documents and appearance in this Court to seek for relief. META seeks presently incurred attorney fees and any further reasonable attorney fees reasonably and necessarily incurred to lawfully comply with the subpoena in addition to the costs incurred for employees to locate, review and assemble the documents, contact EPRI and the cost of copying and transporting the documents. (a copy of time and charges for legal services is attached hereto as exhibit 5 and made a part of this motion)

META and its attorney submit their accompanying affidavits in support of this motion.

By its attorney,

E. Steven Coren, Esq.
BBO 099740
Kerstein, Coren, Lichtenstein & Finkel LLP
60 Walnut Street
Wellesley, MA 02481
(617) 969-7139

DATED:        August 11, 2005

## TABLE OF CONTENTS

**EXHIBIT 1**    Subpoena Issued by the U.S. District Court for Civil Case Number 3:03-CV-0438

**EXHIBIT 2**    Agreement between META Environmental, Inc. and Electric Power Research Institute ("EPRI")

**EXHIBIT 3**    Letter from David Mauro , President, META Environmental, Inc. to Salvadore A. Casente, Jr. of Electric Power Research Institute dated August 9, 2005

**EXHIBIT 4**    Letter to Paul G. Ferrara, Esquire from Steven Coren, Esquire Dated August 8, 2005

**EXHIBIT 5**    Bill for Professional Services Rendered from Kerstein, Coren Lichtenstein & Finkel, LLP dated August 11, 2005

### Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW YORK STATE ELECTRIC<br>& GAS CORPORATION,<br><br>Plaintiffs, | SUBPOENA<br>IN A CIVIL CASE |
| -vs- | CASE NUMBER:[1]<br>3:03-CV-0438 |
| FIRST ENERGY CORPORATION,<br><br>Defendants. | Northern District of New York |

TO:  META Environmental, Inc.
     49 Clarendon Street
     Watertown, MA 02472

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME; |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME; |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
All documents, recordings and photographs in your possession concerning information or investigation relating to the requests set forth in the attached section entitled "Documents To Be Produced".

| PLACE<br>Costello, Cooney & Fearon, PLLC<br>Salina Place, Suite 400<br>205 South Salina Street<br>Syracuse, New York 13202-1327 | DATE AND TIME<br>August 12, 2005. |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME<br>; |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF<br>ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>_____, Defendant | DATE<br><br>July 19, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Paul G. Ferrara, Esq.
Costello, Cooney & Fearon, PLLC, 205 South Salina Street, Syracuse, New York 13202 Telephone (315) 422-1152

(See Rule 45, Federal Rules of Civil Procedure, Parts C&D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

© PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

U:\USERS\CAPAN\REC\first energy META subpoena.wpd

# DEFINITIONS

A.    For the purpose of this subpoena, the word "person" means any entity and includes, but is not limited to, any natural person, individual, proprietorship, firm, receiver, joint owner, association, company, partnership, joint venture, public corporation, municipal corporation, corporation, consortium, governmental or public or quasi-public entity, citizen's group or association, commission, United States Government, State, political subdivision of a State, trust or estate and any other form of organization or association.

B.    For the purpose of this subpoena, the term "document" means any recordation in any medium upon which information is printed or recorded or from which information can be recorded, including, without limitation, the foregoing:

accountants' reports, accountings, advertisements, affidavits, agendas, agreements, analyses, analytical results, announcements, annual, quarterly, and other corporate reports filed with the United States Securities and Exchange Commission, appointment books, appraisals, architectural and engineering plans, articles in newspapers, magazines, journals and periodicals, articles of incorporation and amendments, audio recordings, authorizations, bid specifications, bids, bills of lading, bills, blueprints, books, books of records of account, brochures, bulletins, calculations, chain of custody sheets, charts, checks, codes and instructions to retrieve, obtain and interpret same, computer discs and tapes, computer printouts, computer back-up files, contracts, corporation minutes, correspondence, data processing cards, data sheets, deeds, desk calendars, diagrams, diaries, documents evidencing title, drafts, drawings, electronic mail, evaluations, field notes, films, folios, forms, graphs, guidelines, handwritten notes, indices, information contained in or on or retrievable from computer programs or other electronically recorded information, along with any manuals, inter-office and intra-office communications and directives, interviews, inventory lists, invoices, laboratory bench sheets, laboratory printouts, laboratory sheets, layouts, leaflets, leases, ledgers, letters, licenses, literature, maintenance records, manifests, manuals, maps, memoranda, microfilm, minutes of meetings, movies, negatives, notations, notes, notices, opinions, orders, pamphlets, papers, payroll records, performance results, permits, phone logs, phone messages, photographs, plans, pleadings, plots, policies, price lists, proposals, publications, punch lists, questionnaires, quotations, receipts, records, records of telephone conversations, interviews, conferences, minutes of other conversations, regulations, renderings, reports, including but not limited to reports filed with governmental agencies, requests for proposal, schematics, searches, securities ledgers,

shipping and mailing records, shop logs, sketches, slides, specifications, spreadsheets, standards, statements, stenographic notes, statements of account, strip charts, studies, summaries, surveys, synopses, tabulations, telefax, telegrams, teletypes, telex messages, tests results, transcripts, transparencies, videotapes, vouchers, warranties, weigh fills, working papers and yard books.

The term shall also apply to all nonidentical copies thereof whenever such copies differ from the original by virtue of written notations, revisions, underlining, highlighting, or any other alteration.

    C.    For the purpose of this subpoena, the words "you" or "your" or "META" shall mean META Environmental, Inc., all its predecessors or successors in interest, all present or former parents, subsidiaries, affiliates and divisions and all of the present and former directors, officers, employees, subcontractors, representatives, partners, accountants and/or attorneys.

    D.    For the purpose of this subpoena, "NYSEG" shall mean the New York State Electric and Gas Corporation, all its predecessors or successors in interest, all their present or former parents, subsidiaries, affiliates and divisions and all of the present and former directors, officers, employees, subcontractors, representatives, partners, accountants and/or attorneys.

    E.    For the purpose of this subpoena, the word "any" shall mean "each and every" as well as "anyone."

    F.    For the purpose of this subpoena, the term "Site" or "Sites" shall mean any of NYSEG's former manufactured gas plants ("MGP") included on Exhibit "A" attached hereto, including but not limited to the following locations located in the state of New York:

        1.    Elmira

        2.    Owego

    G.    For the purpose of this subpoena, the "Relevant Period" means 1906 through the present.

H.    For the purpose of this subpoena, the terms "waste" and "material" shall include but not be limited to garbage, refuse, sludge, sewage, dredged spoil, waste oil, grease, munitions, wrecked or discarded equipment, spent material and by-products, "off-specification" product, solid waste as that term is defined under the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 et seq. and the regulations promulgated thereunder (hereinafter, "SWDA") and any other material from industrial, commercial, mining or agricultural operations which is discarded, disposed or recycled or intended to be discarded, disposed or recycled, including any "waste" or "material" comprised of or containing any Hazardous Substance(s).

I.    For the purpose of this subpoena, the term "hazardous substance" shall have the same meaning as in § 101(4) of the federal Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended ("CERCLA"), including but not limited to:  (1) any substance designated pursuant to § 311(b)(2)(A) of the Federal Water Pollution Control Act, (2) any element, compound, mixture, solution, or substance designated pursuant to § 102 of CERCLA, (3) any hazardous waste having the characteristics identified under or listed pursuant to Section § 6921 of SWDA, (4) any toxic pollutant listed under § 307(a) of the Federal Water Pollution Control Act, (5) any hazardous air pollutant listed under § 112 of the Clean Air Act, (6) any imminently hazardous chemical substance or mixture with respect to which the Administrator of EPA has taken action pursuant to § 7 of the Toxic Substances Control Act 15 U.S.C. §§ 2601, et seq.; such elements and compounds including petroleum products, which are defined as such by the New York State Department of Environmental Conservation; "concentrated solid or semi-solid hazardous substances" as such term is defined by the New York Brownfield Act, ECL §27-1405; and "petroleum" as such term is defined by the New York Navigation Law, Section 172.  The term shall be construed broadly to include substances or materials which were not defined as a "hazardous substance" under law at the time of occurrence of any activity or event relating to them about which these Requests inquire, if such substances were or are "hazardous substances" under law previous or subsequent to the occurrence of such activity or event.

115785.1 7/18/05                    3

J.      "Facility" or "Facilities" shall be defined in accordance with § 101(9) of CERCLA, and shall include, without limitation, plants, shops, garages, installations, equipment, pipe or pipeline, well, pit, lagoon, complexes, buildings or other improved or unimproved real estate, impoundment, ditch, landfill, storage container, motor vehicle, past or present, that any present of former owner of the Site own(ed), lease(ed), or operate(d).

K.      "Relating to" or "relate to" shall mean referring to, discussing, reflecting, dealing with, analyzing, evaluating, estimating, constituting, describing, evidencing, or pertaining to in any way either directly or indirectly in either whole or in part.

L.      "Remedial Action" or "Remediation" shall be defined in accordance with Section 9601 (24) of CERCLA, and shall also include "Interim remedial measures" as defined in accordance with Section 27-1405 of the New York Brownfield Cleanup Program, and "cleanup and removal" as such term is defined in Section 172 of the New York Navigation Law.

M.      "Removal" or "remove" shall be defined in accordance with Section 9601 (23) of CERCLA.

N.      The terms "treatment", "storage" and "disposal" shall be defined in accordance with Section 6903 of the SWDA.

O.      The terms "release" or "releases" shall have the same meaning as in Section 9601(22) of CERCLA, and shall also include the term "discharge" as defined in Section 172 of the New York Navigation Law.

## INSTRUCTIONS

1.  <u>Any Document(s) Not In Your Possession or Control</u>. With respect to any document that was, but is no longer in your possession or subject to your control, state:

      a.    Whether it is missing or lost;
      b.    Whether it has been destroyed or disposed of;
      c.    Whether it has been transferred, voluntarily or involuntarily, to others; and
      d.    The date of origin of the document, the author of the document, and the date upon which the document was lost or destroyed.

2.  Unless otherwise specified herein, the following requests shall refer to the time period from 1906 through the date of your responses.

3.  If you object to the production of any document on the claim of attorney-client or work-product privilege, identify the privilege claimed as well as each document for which such privilege is claimed, together with the following information with respect to each such document:

      a.    date;
      b.    sender;
      c.    addressee;
      d.    subject;
      e.    the basis on which the privilege is claimed; and
      f.    the names of persons to whom copies of any part of the document were furnished, together with an identification of employer and their job titles.

4.  To the extent that you consider any of the following document requests objectionable, respond to so much of each document request and part thereof, as is not objectionable in your view and separately state that part of each document request as to which you raise objection and each ground for such objection.

5.  If any of the following requests comprise documents which you contend contain confidential, business, trade secret or proprietary information, you shall not withhold such documents on the grounds of confidentiality but shall forthwith advise all parties to this litigation of the confidential nature of such material and request all parties to stipulate to the entry of an appropriate order preserving such confidentiality.

## DOCUMENTS TO BE PRODUCED

All documents within your possession, custody or control which reflect, refer or relate in any way to the Sites and/or environmental conditions or remediation, investigation or removal efforts at the Sites.

All documents within your possession, custody or control which reflect, refer or relate in any way to correspondence between you and any and all representatives of NYSEG and/or the New York State Department of Environmental Conservation ("NYSDEC") relating to the Sites.

All documents within your possession, custody or control which reflect, refer or relate in any way to reports relating to the Sites, including without limitation, notes and drafts of reports.

All documents within your possession, custody or control which reflect, refer or relate in any way to interviews of persons with knowledge of the operation of the Sites and activities conducted at the Site by NYSEG or other persons during the period 1906 through the present.

All documents within your possession, custody or control which reflect, refer or relate in any way to statements of witnesses relating to the operation of the Sites and activities conducted at the Sites by NYSEG or other persons during the period 1906 through the present.

All documents within your possession, custody or control which reflect, refer or relate in any way to the demolition, dismantling and/or decommissioning of structures of other improvements at, on or under the Sites, including without limitation, all documents regarding the demolition, dismantling and/or removal of above-ground or below-ground structures (including, without limitation, buildings, piping, tanks, storage vessels, liquid containment or transmission structures), Waste, Material and/or Hazardous Substances from the Sites.

All documents within your possession, custody or control which reflect, refer or relate in any way to the disposal or Releases of coal tar or other wastes at the Sites.

All documents within your possession, custody or control which reflect, refer or relate in any way to regrading, filling, excavating or paving of or at the Sites.

113783.1 W76M5                                    6

All documents within your possession, custody or control which reflect, refer or relate in any way to Remedial Actions and Removals at the Sites, including permits, authorizations, approvals issued by any governmental agency in connection with such Remedial Action or Removal.

All documents within Your possession, custody or control which reflect, refer or relate in any way to the use, handling, management, treatment, storage or disposal of Hazardous Substances at the Sites.

All documents within your possession custody or control identifying persons who participated in the handling, management, storage, treatment, transportation, or disposal of Hazardous Substances at the Sites.

All maps, photos, plans, aerial photos, and other graphic depictions of the Sites within your possession custody or control.

All documents within your possession, custody or control relating to the Sites and that were provided to you by NYSEG, its parent, or any of their agents, representatives or employees.

DATED:

Paul G. Ferrara, Esq.

115785.1 7/18/05

7

EXHIBIT A

| | |
|---|---|
| Albion | Ingersoll Street, Albion, NY (Orleans County) |
| Auburn, Clark Street | Clark Street, Auburn, NY (Cayuga County) |
| Auburn, Green Street | Green, Water & Hulbert Streets, Auburn, NY (Cayuga County) |
| Auburn, McMaster Street (aka Water Street) | 23 McMaster Street, Auburn, NY (Cayuga County) |
| Corning | Intersection of Chestnut Street & West Tioga Avenue, Corning, NY (Steuben County) |
| Cortland/Homer | South Main Street (Route 11), Homer, NY (Cortland County) |
| Dansville | 50 Ossian Street, Dansville, NY (Livingston County) |
| Elmira, Madison Avenue | Madison Avenue, Elmira, NY (Chemung County) |
| Geneva, Border City | East Ninth Street, Waterloo, NY (Seneca County) |
| Geneva, Wadsworth St. | Wadsworth St., Geneva, NY (Ontario County) |
| Goshen | 502 – 508 West Main Street, Goshen, NY (Orange County) |
| Granville | 85 Main Street, Granville, NY (Washington County) |
| Ithaca, Cayuga Inlet | West Court Street, Ithaca, NY (Tompkins County) |
| Ithaca, Court Street | Corner of North Plain & Court Streets, Ithaca, NY (Tompkins County) |
| Ithaca, First Street | West end of Third Street at the confluence of Cayuga Inlet & Cascadilla Creek, Ithaca, NY (Tompkins County) |
| Lockport, State Road | State Road, Lockport, NY (Niagara County) |
| Lockport, Transit St. | South Transit St., Lockport, NY (Niagara County) |
| Mechanicville, Central Avenue | North Central Avenue, Mechanicville, NY (Saratoga County) |
| Newark | Water Street, Newark, NY (Wayne County) |
| Norwich | 20 Birdsall Street, Norwich, NY (Chenango County) |
| Oneonta | Gas Avenue, Oneonta, NY (Otsego County) |
| Owego | East Main Street, Owego, NY (Tioga County) |
| Penn Yan, Water Street | SE Corner of Liberty & Water Streets, Penn Yan, NY (Yates County) |
| Plattsburgh, Saranac Street | Saranac Street, Plattsburgh, NY (Clinton County) |

EPRI/CBPMA
941201/950629

## MASTER AGREEMENT
### No. META950701LE
between
ELECTRIC POWER RESEARCH INSTITUTE, INC.
and
META ENVIRONMENTAL, INC.

Effective as of: July 1, 1995

  This Master Agreement is entered into by and between ELECTRIC POWER RESEARCH INSTITUTE, INC., a District of Columbia nonprofit corporation, with offices at 3412 Hillview Avenue, P.O. Box 10412, Palo Alto, California 94303 ("EPRI"), and META ENVIRONMENTAL, INC., a corporation with offices at 49 Clarendon Street, Watertown, MA 02172 ("CONTRACTOR").

## RECITALS

  A. EPRI is organized to promote, conduct, and sponsor research and development with respect to the production, transmission, distribution, and utilization of electric energy.

  B. The CONTRACTOR represents that it is equipped and qualified to perform research and development in these areas.

  C. EPRI desires to contribute to the cost of additional research and development by the CONTRACTOR as described herein, and to obtain the results thereof for the benefit of EPRI, its members, and the public.

  D. The primary purpose of the research agreements issued pursuant to this Master Agreement is for the CONTRACTOR to develop and to transfer to EPRI information, and all rights with respect thereto, for the benefit of EPRI, its members, and the public.

  E. EPRI and the CONTRACTOR jointly desire to agree upon a set of terms and conditions (the "Master Agreement") that may be used as a contractual basis for work that may be agreed to between EPRI and the CONTRACTOR at a later date.

  NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements hereinafter set forth, the parties agree as follows:

1

## ARTICLE 1 - Applicability of Master Agreement

1.1 Incorporation of Master Agreement Terms and Conditions. The terms and conditions of this Master Agreement shall be incorporated in research agreements when the research agreement document between EPRI and the CONTRACTOR for a specific scope of work (the "Project Agreement") specifically states that this Master Agreement is incorporated into the Project Agreement. This Master Agreement does not create any rights, responsibilities, duties or obligations on any party unless the Project Agreement specifically states that this Master Agreement is incorporated into the Project Agreement.

1.2 Project Specific Modifications. In the event EPRI and/or the CONTRACTOR determine that the work set forth in the Project Agreement (the "Work") requires modification of the terms and conditions of this Master Agreement, EPRI and the CONTRACTOR shall negotiate in good faith, the resulting modifications agreed to by EPRI and the CONTRACTOR shall be stated in the Project Agreement, and the modifications stated in the Project Agreement shall take precedence over the terms and conditions of this Master Agreement for that specific Project Agreement only.

## ARTICLE 2 - Performance of the Work

2.1 Work. The CONTRACTOR shall use its best efforts to perform the work (the "Work") and deliver the deliverables (the "Deliverables") set forth in each Project Agreement.

2.2 Period of Performance. The CONTRACTOR shall use its best efforts to complete the Work, including submission of the final technical report provided for in Subarticle 6.2 below, within the time period(s) set forth in each Project Agreement (the "Period of Performance").

2.3 Notice of Delay. Whenever the CONTRACTOR knows that any actual or potential condition is delaying or threatens to delay the timely performance of the Work, the CONTRACTOR shall within ten (10) days give EPRI notice thereof, including in such notice all relevant information with respect thereto, and may request an extension of time to perform the Work.

2.4 EPRI Project Manager. The Work shall be performed by the CONTRACTOR under the general direction of the project manager designated by EPRI in each Project Agreement (the "EPRI Project Manager"). EPRI, at any time, may designate a new project manager by written notice to the CONTRACTOR. The CONTRACTOR will maintain contact with the EPRI Project Manager during the Period of Performance. The CONTRACTOR will provide briefings on the progress of the Work, in addition to the reports required by each Project Agreement, as requested by the EPRI Project Manager.

Reports, communications, and questions of a technical nature shall be transmitted to the EPRI Project Manager at the address set forth in each Project Agreement. Matters of a contractual nature, including but not limited to Master Agreement terms, Project Agreement terms, annual funding, the Period of Performance and issues affecting the Contract Cost Limitation (as defined in Subarticle 4.3 below), shall be sent to EPRI in accordance with Article 20 of this Master Agreement with an information copy to the EPRI Project Manager for that Project Agreement.

2.5 <u>Environment, Safety, and Health</u>. The CONTRACTOR shall maintain environmental, safety, and health policies, programs, and procedures necessary to assure compliance with all applicable laws, regulations and orders and shall perform the Work in a safe manner. Whenever the CONTRACTOR knows of any actual or potential environmental, safety, or health conditions that affect or threaten to affect its performance of the Work in a safe manner and in compliance with customary safe practices, the CONTRACTOR shall immediately notify EPRI in writing to that effect in accordance with Article 20 of this Master Agreement with an information copy to the EPRI Project Manager for that Project Agreement.

## ARTICLE 3 - Changes

3.1 <u>Changes/Stop Work</u>. For any Project Agreement EPRI's Contracts Division may, at any time, by written notice to the CONTRACTOR, (i) make changes to the Work within its general scope, including but not limited to revising or adding to the Work or deleting portions thereof, or revising the Period of Performance, or (ii) require the CONTRACTOR to stop all or any part of the Work.

3.2 <u>Compliance</u>. Upon receipt of such change notice or stop work order, the CONTRACTOR shall immediately take all necessary steps to comply therewith and to minimize the incurrence of costs allocable to Work changed or stopped.

3.3 <u>Equitable Adjustment</u>. If any change under Subarticle 3.1 causes an increase or decrease in the cost of, or the time required for performance of the Work, an equitable adjustment shall be made by EPRI in the Contract Cost Limitation (as defined in Subarticle 4.3 below) and/or Period of Performance. Any request by the CONTRACTOR for an equitable adjustment must be made within thirty (30) days from the date of receipt by the CONTRACTOR of the notification of change. Unless otherwise directed by EPRI in writing, the CONTRACTOR shall perform the Work (including Work the subject of an equitable adjustment) to completion during the resolution of any dispute relating to an equitable adjustment.

## ARTICLE 4 - Costs

4.1 <u>Cost Reimbursement</u>. EPRI shall reimburse the CONTRACTOR for all costs incurred in the performance of the Work, subject to the limitations contained below in

3

8.2 <u>Ownership</u>. Title and ownership of Software developed during the course of the Work, and copyrights therein, shall be as provided in Subarticle 9.1.

8.3 <u>Computer Virus Contamination</u>.

(a)    If the CONTRACTOR uses computer software of any kind (designed for workstations or personal computers) in the performance of the Work, including but not limited to development thereof, the CONTRACTOR shall systematically check all such computer software for computer virus contamination.

(b)    The CONTRACTOR agrees that any Software delivered to EPRI under any Project Agreement, pursuant to the requirements of Subarticle 8.1 above, shall be checked to determine if it is free of viruses that are detectable using accepted industry practice at the time of its delivery to EPRI. In addition, any Software delivered to other organizations, including, but not limited to, other EPRI contractors, consultants, and electric utility companies shall also be checked to determine if it is free of such viruses. Accordingly, CONTRACTOR shall (i) check, in a manner acknowledged by EPRI to be in compliance with accepted industry practice, all Software for virus contamination prior to the delivery thereof to EPRI or other organizations, (ii) label all Software diskettes and other electronic media with the date and method used to check for virus contamination, and (iii) prior to delivery to EPRI or other organizations promptly replace any Software found to contain virus contamination as of that time, with like Software free of viruses.

(c)    The CONTRACTOR agrees to ensure that all its employees shall comply with the requirements of this subarticle and shall also require that all subcontractors' employees comply with the requirements of this Subarticle 8.3.

## ARTICLE 9 - Intellectual Property Rights

9.1 <u>Ownership</u>. EPRI shall own all right, title, and interest in and to all tangible and intangible results and items arising in the course of performing or constituting the results of the Work, including without limitation all inventions, know-how, documentation, Software and Data (the "Technology"), and all intellectual property rights therein, including without limitation all current and future worldwide patents and other patent rights, utility models, copyrights, mask work rights, trade secrets, and all applications and registrations with respect to any of the foregoing ("Intellectual Property Rights"). The CONTRACTOR hereby irrevocably transfers, conveys and assigns to EPRI in perpetuity all right, title, and interest in and to the Technology, including without limitation all Intellectual Property Rights with respect thereto. EPRI shall have the exclusive right to apply for or register patents, mask work rights, copyrights, and such other proprietary protections as it wishes.

12

9.2 <u>Assistance</u>. The CONTRACTOR agrees to execute such documents, render such assistance, and take such other action as EPRI may request, at EPRI's expense, to apply for, register, perfect, confirm, enforce and protect EPRI's rights in the Technology. The judgment of EPRI on these matters shall be accepted as final. The CONTRACTOR, for itself and its employees, agrees to extend to EPRI or its designee its full cooperation in (i) enforcing and establishing EPRI's copyrights, patents and other Intellectual Property Rights, (ii) giving testimony, and (iii) providing records and other documents in support of the enforcement and establishment procedures.

9.3 <u>Copyright Notices</u>. The CONTRACTOR will apply copyright notices to all copyrightable items of Technology, indicating EPRI's ownership of the copyrights in the item, using the following form:

"© Copyright 19__ Electric Power Research Institute, Inc., All Rights Reserved"

The year in the notice shall be the first year of publication or, if unpublished, the year in which the item was completed.

9.4 <u>Notice of Inventions and Discoveries</u>. Whenever any invention or discovery is made, conceived or first reduced to practice by the CONTRACTOR or its employees or subcontractors in the performance of any Project Agreement, the CONTRACTOR shall promptly furnish EPRI with complete information thereon including, without limitation, a written description thereof giving the date of invention and names of the inventors and others involved in its development. All invention or discovery disclosures will be prepared and furnished to EPRI in accordance with the format and instructions available from EPRI's Patents Office.

9.5 <u>Agreements with Employees</u>. Except as otherwise authorized in writing by EPRI, the CONTRACTOR will obtain written agreements with its employees as necessary to effectuate the purposes of this Article 9 and Article 10 of this Master Agreement. The CONTRACTOR will furnish to EPRI copies of such written agreements upon request.

9.6 <u>No Claim</u>. The CONTRACTOR agrees that it will not assert or establish or assist any third party with respect to any claim for Intellectual Property Rights inconsistent with those granted to EPRI herein.

9.7 <u>CONTRACTOR's Rights</u>. Except as expressly authorized in writing by EPRI, the CONTRACTOR shall have no rights to use, sell, distribute, publish, reproduce, modify, create derivative works of, make, or have made the Technology. Nothing contained in this Master Agreement or any Project Agreement shall be implied to grant the CONTRACTOR any license with respect to the Technology or to the Work performed hereunder or the results thereof.

13

MA: <u>META950701LE</u>

9.8 <u>Licenses</u>.

(a)    The CONTRACTOR agrees not to incorporate into the Technology any of its inventions, original works of authorship or trade secrets ("Prior Works") and not to knowingly include any such Prior Works of others, without first granting to or obtaining for EPRI a nonexclusive, royalty-free, paid-up irrevocable, perpetual world-wide license, with the right to grant sublicenses to use for any purpose whatsoever any such Prior Works. If such royalty-free license is unavailable and EPRI and the CONTRACTOR determine that such Prior Works must be included in the Technology, the CONTRACTOR shall obtain a royalty-bearing license under terms acceptable to EPRI.

(b)    To the extent that the CONTRACTOR owns any background patents or other rights and EPRI determines that such rights are necessary for full utilization of the Technology developed hereunder, the CONTRACTOR agrees to make available, upon EPRI's request, to whomever EPRI may designate, such background patent or other rights in return for reasonable royalties on a nondiscriminatory basis.

<u>ARTICLE 10 - Confidentiality</u>

10.1 <u>Restrictions on Disclosure and Use</u>. The CONTRACTOR acknowledges that during the term of each Project Agreement it will be exposed to certain information concerning EPRI's business and technology and related information which is confidential or proprietary to EPRI and is not generally known to the public ("Confidential Information"). Without limiting the foregoing, the Technology shall be deemed to be Confidential Information of EPRI. The CONTRACTOR agrees that during and after the term of each Project Agreement it will not use any Confidential Information except in accordance with the provisions and for the purposes of any Project Agreement, and will not disclose any Confidential Information to any third party without the prior written consent of EPRI.

10.2 <u>Exceptions</u>. The provisions of this Article 10 shall not apply to Confidential Information to the extent that such information is:

(a)    generally known or otherwise in the public domain prior to disclosure hereunder, or becomes so known subsequent to such disclosure through no fault of the CONTRACTOR; or

(b)    received by the CONTRACTOR after the Effective Date of a Project Agreement without restriction from a third party not under an obligation to EPRI not to disclose it and otherwise not in violation of EPRI's rights; or

(c)    furnished to any third party by EPRI without a similar restriction on the third party's rights.

14

10.3 Court Order. In the event documents related to the Technology or other documents relating to a Project Agreement are subpoenaed or otherwise required to be produced or made available to a third party by order of a court or governmental administrative agency, the CONTRACTOR shall promptly notify EPRI in writing and allow twenty (20) days from receipt by EPRI of such notice, for response by EPRI before producing such documents. The CONTRACTOR will cooperate with EPRI in obtaining a protective court order or take such other action as may be appropriate under the circumstances.

10.4 CONTRACTOR Information. The parties contemplate that in the performance of the Work the CONTRACTOR may furnish proprietary information that is generally related to the subject matter of a Project Agreement but has been developed by the CONTRACTOR apart from any Project Agreement and that is confidential to the CONTRACTOR. If the CONTRACTOR furnishes such information, the CONTRACTOR shall clearly identify it as "[CONTRACTOR's] Proprietary Information." Such identification, in and of itself, however, shall not be considered conclusive in any determination of whether such information is developed by the CONTRACTOR apart from any Project Agreement or whether such information is confidential to the CONTRACTOR. EPRI shall have no obligation to keep any such information confidential unless otherwise agreed in writing.

## ARTICLE 11 - CONTRACTOR Representations and Warranties

The CONTRACTOR represents and warrants to EPRI on a continuing basis:

(a) Ownership Except as disclosed in writing by CONTRACTOR and approved in advance by EPRI in writing, the CONTRACTOR has the right and power to make the assignments to EPRI hereunder.

(b) Independent Work Except for Technology that is in the public domain, and except as disclosed in writing by the CONTRACTOR and approved in advance by EPRI in writing, the Technology has been independently created by the CONTRACTOR's employees, agents, and consultants, and use of the Technology by EPRI as contemplated herein does not depend on the acquisition of rights from any third party.

(c) No Infringement To the best of the CONTRACTOR's knowledge after a reasonable investigation, neither the Technology, nor the exercise by EPRI of any of the rights granted hereunder, infringes any intellectual property right of any third party.

(d) No Litigation or Claims At the time of execution of each Project Agreement, the CONTRACTOR shall notify EPRI in writing of any pending litigation or claim or, to the best of the CONTRACTOR's knowledge, the basis for any claim, that the CONTRACTOR does not own the Technology (subject to the assignment to EPRI set

15

 **Environmental, Inc.**

49 Clarendon Street
Watertown, MA 02472
TEL: (617) 923-4662
FAX: (617) 923-4610
www.metaenv.com

August 9, 2005

Mr. Salvador A. Casente, Jr.
Associate General Counsel
Electric Power Research Institute
3412 Hillview Avenue, P.O. Box 10412
Palo Alto, California 94303-0813

RE:  Notification to EPRI of Subpoena to Produce Documents Relevant to Case No. 3:03-CV-0438

Dear Mr. Casente:

META Environmental, Inc. (META) has been served a subpoena to produce all documents in our possession, custody or control related to former MGP sites of New York State Electric and Gas (NYSEG). I have enclosed a copy of the subpoena documents for your review.

As you know, NYSEG has been a long time EPRI member. Over the past 10 years or so, META has conducted environmental research for EPRI on NYSEG sites or on samples of soil, water, or NAPL from NYSEG sites. I have not reviewed my records and cataloged all the instances where META has conducted EPRI research on NYSEG sites but I know there were several. It will take some time to recall and document this work as it was conducted from time to time ███████████████. I have reviewed META's master services agreement with EPRI – No. META950701LE – and noted that Article 10 paragraph 10.3 requires that I notify you in writing of any subpoena of this nature (contract pages also enclosed). Please consider this letter my notification.

At the present time, my attorney, Mr. E. Steven Coren of the Law Firm Kerstein, Coren, Lichtenstein & Finkel LLP, Wellesley Massachusetts is requesting an extension to give META the time to comply with the subpoena request. Part of that request for extension notes that my contract with you requires notification and that EPRI will be giving time to review the subpoena and decide on the appropriate action. Since the subpoena demands all the documents by August 12, it is important for us to know EPRI's position as soon as possible.

If you have any questions, please call me at 617-923-4662 or Mr. Coren at 617-969-7139.

Sincerely,

David M. Mauro
President

CC: S. Coren

Document6

**Privileged and Confidential**
**Prepared Under the Direction of Counsel**

## Dave Mauro

| | |
|---|---|
| **From:** | Casente, Salvador [scasente@epri.com] |
| **Sent:** | Monday, August 08, 2005 8:09 PM |
| **To:** | Coleman, Andrew; Dave Mauro |
| **Cc:** | Nott, Babu |
| **Subject:** | Subpoena |

Dear Mr. Mauro, I am an associate general counsel in EPRI's legal department. Babu and Andy sent along an email regarding a subpoena you received which may cover some EPRI Materials. You can send along to me the names of the materials that you plan to produce and we can talk. I am at our Board Meeting through Wednesday, so I don't have access to the license between your company and EPRI, but if there is a notice provision in there you can send notice to me at the address below.

Salvador A. Casente, Jr.
Associate General Counsel
Electric Power Research Institute, Inc.
3412 Hillview Ave. / P.O. Box 10412
Palo Alto, CA 94303-0813

It would be helpful if you could find out if there is a protective order in the case. If EPRI's materials aren't in the public domain, we would want to have them covered by the protective order.

Thanks very much.

Salvador A. Casente, Jr.
Associate General Counsel
EPRI

# KERSTEIN, COREN, LICHTENSTEIN & FINKEL LLP
## Attorneys at Law
### Newton-Wellesley Executive Office Park
### 60 Walnut Street
### Wellesley, MA 02481

E. STEVEN COREN
scoren@kclf-law.com

TEL: (617) 969-7139
FAX: (617) 244-6511

August 8, 2005

Paul G. Ferrara, Esq.
Costello, Cooney & Fearon, PLLC
205 South Salina Street
Syracuse, NY 13202

RE:     New York State Electric & Gas Corp.
VS.     First Energy Corporation
NO.     3:03 CV 0438

Dear Attorney Ferrara:

Please be advised that Attorney Robert Rosenblum at our office represents META Environmental, Inc. regarding a subpoena served by you in the above-entitled case. Attorney Rosenblum is away and I have been asked to handle this matter. My client just returned from a business trip and was informed of your subpoena. There are several issues to be worked out regarding the requested documents. The documents date back to 1990 and are comprehensive. It will take substantial hours by employees qualified to recognize the documents that have been subpoenaed. While it is contended that the search and location of the requested documents is unduly burdensome, my client is willing to comply if your office is willing to pay for the locating, identifying and assembling of the documents, as well as the copying charges. This cannot be accomplished by your requested date of August 12, 2005 and a later date needs to be agreed upon. Further, I am informed that a good deal of work performed by META on NYSEG sites was performed for the Electric Power Research Institute, a nonprofit company funded by electric energy companies. There is a signed agreement between META and EPRI establishing intellectual ownership of the information in EWPRI and a prohibition against META from disclosing the information contained in the documents. Under the Agreement, EPRI must be notified and has 20 days to respond. I would appreciate your contacting me at your earliest convenience to discuss this matter as I would anticipate having to appear in U.S. District Court in Boston to oppose the subpoena under Fed.R.Civ.P. 45 by August 12, 2005 if I do not hear from you.

Thank you for your anticipated courtesy.

Very truly yours,

E. Steven Coren
ESC/lg
cc:     David M. Mauro

TRANSMISSION VERIFICATION REPORT

```
TIME : 08/08/2005 15:47
NAME : KERSTEIN COREN
FAX  : 6175505366
TEL  : 6179659690
SER.# : BROC2J157702
```

```
DATE,TIME          08/08  15:47
FAX NO./NAME       9131542211396453
DURATION           00:00:38
PAGE(S)            02
RESULT             OK
MODE               STANDARD
                   ECM
```

# Kerstein, Coren, Lichtenstein & Finkel LLP
## 60 Walnut Street
## Wellesley, MA  02481

(617) 969-7139

Invoice submitted to:

David Mauro, President
META Environmental, Inc.
49 Clarendon Street
Watertown MA 02472

August 11, 2005

Subpoena documents
NYSEG v. FEC
Invoice #  20220

### Professional Services

| | | | Hours | Amount |
|---|---|---|---|---|
| 8/4/2005 | ESC | Telephone conference with client; review of documents | 0.30 | 75.00 |
| 8/5/2005 | ESC | Review of correspondence and information from client; telephone conference with client; telephone conference with Attorney Ferrara's secretary describing situation and asking for extension of time and return call to discuss confidentiality and costs of locating and reviewing documents. | 0.50 | 125.00 |
| 8/8/2005 | ESC | Research, Rule 45; prepared and faxed correspondence to Attorney Ferrara; telephone conference with client; review of faxed notice by META to EPRI regarding subpoena pertaining to confidential documents; telephone conference with client. | 0.50 | 125.00 |
| 8/9/2005 | ESC | Review of confidentiality agreement regarding EPRI; telephone conference with client. | 0.30 | 75.00 |
| 8/10/2005 | ESC | Telephone conference with Federal Court; telephone conference with client; preparation of initial draft of emergency motion and affidavits and exhibits. | 1.00 | 250.00 |
| 8/11/2005 | ESC | Conference with client; revisions to motion and affidavit; appearance, Federal District Court, argument to modify subpoena and seek protection for confidentiality and costs. | 4.00 | 1,000.00 |
| | | For professional services rendered | 6.60 | $1,650.00 |
| | | Balance due | | $1,650.00 |