UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW YORK STATE ELECTRIC & GAS CORPORATION, | : :  : : : : : : : : | 

NEW YORK STATE ELECTRIC &
GAS CORPORATION,

       Plaintiff,

v.

FIRSTENERGY CORPORATION,

       Defendant.

MBD-05-10295-RGS

**FIRSTENERGY CORPORATION'S OPPOSITION TO EMERGENCY MOTION FOR RELIEF FROM DOCUMENT SUBPOENA & MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendant FirstEnergy Corporation ("FirstEnergy"), by its undersigned counsel, respectfully submits this Opposition, and Memorandum of Law in Support Thereof, to META Environmental, Inc.'s ("META") Emergency Motion for Relief from Document Subpoena.

**INTRODUCTION**

META's Emergency Motion for Relief from Document Subpoena ("META's Motion") must be denied as FirstEnergy's subpoena is not unduly burdensome. META's request for the reimbursement of costs associated with responding to the subpoena must also be denied as unreasonable. Moreover, META's request for attorneys' fees incurred in connection with filing its Emergency Motion must be denied because META itself delayed eleven days in responding to FirstEnergy's subpoena and META's Motion was unnecessary under the Federal Rules of Civil Procedure.[1]

---

[1] The basis for META's request for attorneys' fees is related in large part to either unfortunate communication failures or busy schedules, or a combination of the two. In the course of discussions regarding the subpoena, FirstEnergy and Meta made substantial progress toward resolving many of the issues raised in META's Motion. FirstEnergy is discouraged that counsel for META has not responded to FirstEnergy's most recent communications, but remains hopeful that the parties can reach agreement on all

1

## FACTS

On July 26, 2005, FirstEnergy, through Costello, Cooney & Fearon, PLLC, FirstEnergy's local counsel in New York, served a subpoena on META. (See Respondent's Exhibit "A"). Although David Mauro, the President of META, was out of town on business at that time, he was informed by telephone of service of the subpoena. (See Affidavit of David Mauro, attached to META's Motion at ¶ 1).[2] Despite having been informed of service of the subpoena, Mr. Mauro chose not to address the subpoena or to instruct anyone else at META to address it for one week.[3] See id. Subsequently, on August 2, 2005, Mr. Mauro contacted META's counsel regarding the subpoena. See id.

It was not until two days after META contacted counsel that META's counsel contacted FirstEnergy regarding the subpoena. See id. In short, META did not reach out to FirstEnergy regarding the subpoena until eleven days after receipt of service, with no excuse for the delay. See id.

On August 5, 2005 when META contacted counsel for FirstEnergy, Mr. Ferrara, he was out of the office presenting a seminar. META's counsel did, however, speak with Mr. Ferrara's paralegal regarding an extension for responding to the subpoena. (See Affidavit of Cheryl Martel, attached as Exhibit "B" to the affidavit of Paul G. Ferrara sworn to the 24th day of August, 2005). Mr. Ferrara's paralegal informed META's counsel that extensions were often granted to other entities that had been subpoenaed in this matter. (See id.)

---

[2] points and avoid any further involvement of the Court.

[3] Notably, Mr. Mauro does not state in his affidavit the date on which he was informed of receipt of the subpoena. See Mauro Affidavit at ¶ 1.

Mr. Mauro states that he was "unable to attend to" the affidavit while he was out of the office. See Mauro Affidavit at ¶ 1. Mr. Mauro offers no explanation for his alleged inability to timely address a subpoena issued by the United States District Court of Massachusetts.

On August 8, 2005 – 13 days after META received service of the subpoena, META sent a letter pursuant to Rule 45 setting forth its objections to the subpoena. (See Petitioner's Exhibit "4"). ("Objection"). The Objection lists META's objections to the subpoena and suspended META's obligations to respond. (See Exhibit "4"; See also Fed. R. Civ. P. 45). Notwithstanding META's timely objection to the subpoena, META appeared before this Court on August 11, 2005 and presented META's Emergency Motion for Relief from Document Subpoena. (See META's Motion).

## ARGUMENT

I.   **FirstEnergy's Subpoena on META Is Not Unduly Burdensome.**

The subpoena served by FirstEnergy on META requests documents that are both relevant and necessary to the above-captioned litigation. Moreover, FirstEnergy's subpoena describes the documents requested with particularity and places no undue burden on META. META's admitted involvement[4] with New York State Electric & Gas Corporation's ("NYSEG") former manufactured gas plant sites, which are at the heart of the litigation between NYSEG and FirstEnergy, renders the documents requested in FirstEnergy's subpoena on META crucial to FirstEnergy's defense in this litigation.

A subpoena is not unduly burdensome where the documents sought are relevant, necessary, and described with particularity, and where the subpoena is limited in scope and time and does not unduly burden the subpoenaed party. See e.g., Demers v. Lamontagne, No. 98019762-REK, 1999 U.S. Dist. LEXIS 17500, at *4-5 (D. Mass. May 5, 1999).

The documents requested by FirstEnergy are both relevant and necessary to the litigation between NYSEG and FirstEnergy. This litigation involves the environmental cleanup of twenty-four of NYSEG's former manufactured gas plant sites. NYSEG is seeking from FirstEnergy

---

[4] See META's Motion at page 2.

contribution for the costs it has incurred and expects to incur for the cleanup of these twenty-four sites, which will exceed $100,000,000.00. Therefore, at issue in this case, is the reasonableness and technical merit of the environmental investigations and remediation work undertaken by NYSEG and its contractors, including META. FirstEnergy is the defendant in the litigation and has no control over the number of sites at issue or the contractors that performed investigatory or remedial work at NYSEG's sites.

The documents FirstEnergy is seeking through its subpoena on META are reasonable and necessary because the information is likely to lead to the discovery of evidence regarding the propriety of META's work, the need for such work and the fees associated with META's work. FirstEnergy will need to provide these documents to an expert in order to have the expert opine as to the nature and appropriateness of the investigations and cleanup work performed. Because NYSEG is seeking costs from FirstEnergy associated with expenses it incurred in investigating and remediating its former manufactured gas plant sites, and because META was involved in these investigations and remediations, the documents sought by FirstEnergy in its subpoena are plainly relevant and necessary in the litigation.

Moreover, FirstEnergy's request is not overbroad. The subpoena seeks information related to META's involvement at NYSEG's former manufactured gas plant sites – again, which sites are directly at issue in the litigation between NYSEG and FirstEnergy. The time period is sufficiently limited in that the period inquired about in the subpoena is the same time period as that included in the NYSEG's complaint. In fact, it is substantially more limited because META has advised FirstEnergy that it did not begin work at NYSEG's sites until the 1990s. (See META's Motion). Further, the subpoena is sufficiently particular in that it clearly describes the types of documents sought. The burden on META in responding to this subpoena is minimal

and should have been expected. META has all of the documents requested in its possession. META, as a contractor who performed environmental work on behalf of NYSEG, should have expected the possibility of being involved in litigation initiated by NYSEG with regard to costs associated with such work.

Notably, FirstEnergy and META have engaged in negotiations with regard to limiting the information requested in the subpoena. FirstEnergy presented META with a proposal to limit the subpoena to six sites on the condition that META enter into a stipulation not to destroy documents related to the remaining eighteen sites.[5] FirstEnergy requires that META agree to this stipulation because FirstEnergy may ultimately find itself litigating with NYSEG with regard to the remaining eighteen sites, and cannot risk the destruction of documents relating to those sites. Although FirstEnergy believes its proposal to be reasonable, to date FirstEnergy has not received a response from META regarding the requested stipulation.[6]

## II.  META's Request for Costs Associated with Responding to the Subpoena is Unreasonable.

FirstEnergy is not responsible for reimbursing META for its alleged costs in responding to the subpoena. In its Motion, META estimates the costs associated with responding to the

---

[5] See August 18, 2005 letter from Jane Kozinksi to Steven Coren, attached to affidavit of Paul G. Ferrara as Exhibit "C" and the Case Management Order attached thereto. See also Affidavit of Heather Z. Steele, defendant's Exhibit "D". On June 22, 2005, the United States District Court for the Northern District of New York entered a Case Management Order limiting the initial phases of the litigation between FirstEnergy and NYSEG to six of the twenty-four sites listed in NYSEG's Second Amended Complaint. See Exhibit "C."

[6] FirstEnergy and META also discussed extending the deadline for responding to the subpoena to September 30, 2005. FirstEnergy is agreeable to this extension. If, however, META refuses to stipulate regarding the preservation of relevant documents, FirstEnergy will have no option but to require the production of documents related to all sites included in Exhibit "A" to the subpoena. In this situation, FirstEnergy is agreeable to extend the date for responding to the subpoena to October 12, 2005 -- to allow META sufficient time to gather all responsive documents.

subpoena at $22,400.00. (See Petitioner's Exhibit "5", Mauro Affidavit, ¶5). This number is unreasonable.[7]

FirstEnergy is not responsible to reimburse META for the total of its expenses – META should be forced to bear a portion of the expenses related to responding to the subpoena. Federal Rule of Civil Procedure 45 does not require a party requesting documents under a subpoena to bear the entire cost associated with compliance. See e.g., First American Corp. v. Price Waterhouse LLP, 184 F.R.D. 234, 241 (S.D.N.Y. 1998). Moreover, FirstEnergy has not located any case law supporting a proposition that the subpoenaing party is responsible for the total cost of compliance, nor has META identified any case law supporting such a proposition.

In analyzing a non-party's responsibilities in responding to a subpoena, courts will take into account the position that the non-party holds in relation to the underlying litigation. See id. at 242. Here, META's actions are at issue, indirectly, in the underlying litigation. Specifically, META was substantially involved in the environmental work undertaken by NYSEG at several of its former manufactured gas plant sites. The reasonableness and technical merit of META's investigations and remedial work at NYSEG's sites bears directly on the costs that NYSEG is seeking to recover from FirstEnergy. Moreover, META had unique access to documents that may be critical in unraveling whether the level of investigation and/or remediation that NYSEG performed at its sites was proper. Due to its position in relation to the litigation, META is responsible for a portion of the costs associated with responding to FirstEnergy's subpoena.

META's estimate of costs for responding to the subpoena, as set forth in its Motion, is unreasonable. An agreement between the parties reducing the scope of the subpoena to six of

---

[7] Although the parties have discussed a compromise with regard to the reimbursement costs requested by META, to date FirstEnergy has received no response from META with regard to its offer. In order to timely file its Opposition with this Court, FirstEnergy is proceeding as if no agreement has been reached between the parties.

116867 2 8/25/05                                6

the twenty-four sites at issue will significantly reduce META's costs in responding to the subpoena. Further, it is unclear whether META has performed work at all of the sites. With regard to reimbursement, META should be required to submit detailed documentation regarding the work undertaken in responding to the subpoena. META's blanket estimate, included in Mauro's Affidavit, constitutes an unreasonable request.

Moreover, META's cost estimate can be substantially reduced by employing individuals with lower hourly rates to gather responsive documents. META has an obligation to employ the services of its lowest-level employees, consistent with accurate and reliable identification of responsive material, to gather documents responsive to the subpoena. See Kahn v. General Motors Corp., No. 88 Civ 2982, 1992 U.S. Dist. LEXIS 12191 (S.D.N.Y. Aug. 14, 1992). In its Motion, META sets forth that responding to the subpoena will require 40 hours of its President's time, 40 hours of an engineer's time and 40 hours of a hydrologist's time. (See Petitioner's Exhibit "5", Mauro Affidavit ¶5). FirstEnergy submits that META should employ the services of lower-level employees, with lower hourly rates, to gather responsive documents. Law firms and other organizations typically utilize the services of a paralegal or a clerk, under the supervision of a low-billing rate professional, to gather documents responsive to subpoenas. It is unreasonable to expect FirstEnergy to reimburse META for 40 hours of time spent by the President of META in gathering documents.

Notably, FirstEnergy is not required to reimburse META for any costs resulting from what may constitute a deficient recordkeeping system. See e.g., Hurt v. Dime Saving Bank, 151 F.R.D. 30, 31 (E.D.N.Y. 1993). In his affidavit, Mr. Mauro states that to respond to the subpoena, META has to retrieve and organize documents from long term storage and that other documents are "scattered among various file boxes, drawers and computer drives." (See

Petitioner's Exhibit "5", Mauro Affidavit, ¶4). META is solely responsible for any costs that would not be incurred but for problems associated with its recordkeeping system. META's Motion for reimbursement of costs associated with responding to the subpoena should be denied, or in the alternative, META's requested costs should be substantially reduced and FirstEnergy should be required to contribute only reasonable costs as set forth above.

### III.   META Is Not Entitled to Attorneys' Fees.

#### A.   META's Emergency Motion Was Unnecessary.

META's timely Rule 45 objection to the subpoena suspended its obligation to respond to the subpoena. Under the Federal Rules of Civil Procedure, META had the option, "within 14 days after service of the subpoena [in this case, by August 9, 2005] . . . [to] serve upon [FirstEnergy] written objection to inspection or copying of any or all of the designated material . . . ". See Fed. R. Civ. P. 45(c)(2)(B). On August 8, 2005, META served its objection on Mr. Ferrara, objecting to both the inspection and copying of documents requested in the subpoena. (See Petitioner's Exhibit "4"). Because the subpoena was served on July 26, 2005, META had until August 9, 2005 to timely object to the subpoena. Here, META timely objected to FirstEnergy's subpoena on August 8, 2005.

After META lodged its objection, its obligations were suspended under the subpoena. See Cox v. O'Malley, No. 96-1695, 1997 U.S. App. LEXIS 1514, at *4 (1st Cir. Jan. 22, 1997) (indicating that because plaintiff did not move to compel after defendant objected to production, defendants were not obligated to produce documents under subpoena). Under Fed. R. Civ. P. 45 (c)(2)(B), "If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials . . . except pursuant to an order of the court by which the subpoena was issued." After META served its objection on August 8, 2005, the ball switched to FirstEnergy's

court to move for an order to compel the production of documents. Again, META's duties in responding to the subpoena were suspended on August 8, 2005 with the filing of its timely Objection.

This Court should find that META's Motion was unnecessary and that FirstEnergy should not be compelled to compensate META for attorneys' fees that were needlessly incurred.

> **B.   META's Delay in Responding to the Subpoena Brought About the "Alleged" Need for the Emergency Motion.**

META delayed in addressing and/or responding to the subpoena and is now seeking to hold FirstEnergy responsible for META's own hindrance. As indicated above, META claims a series of unfortunate events for its failure to contact FirstEnergy for eleven days after service of the subpoena. META's own inexcusable delay is not a valid basis for seeking attorneys' fees for this unnecessary motion.

META's first excuse for its delay is that the President of META was out of town on business until August 2, 2005. This excuse fails to explain why Mr. Mauro, who had knowledge of the subpoena, did not contact anyone else at META, or anyone at META's counsel's office, to begin the process of responding to the subpoena in his absence.

META's further excuse for its delay was that its regular attorney, Robert Rosenblum, was away on vacation when Mr. Mauro finally elected to start responding to the subpoena. Mr. Rosenblum is with a firm that consists of at least six attorneys. Therefore, Mr. Rosenblum is not the only attorney who could have addressed this issue. There is no excuse for META's failure to act on the subpoena in a more timely manner.

In short, META delayed for eleven days in responding to the subpoena and has offered no valid excuse for its delay. Had META responded in a more timely manner, and not sat on the subpoena for eleven days, the alleged "emergency" would have been avoided in the first

instance. META's delay set in motion the subsequent series of events that ultimately lead to this Court's involvement in this matter.

The facts present here do not warrant the extreme relief of attorneys' fees. See e.g., Scherer v. GE Capital Corp., 185 F.R.D. 351, 352 (D. Kan. 1999) ("It is unjust to award a party costs and expenses on a motion which may have been rendered unnecessary had the movant made the necessary effort to resolve the dispute without judicial intervention."); Orgulf Transport Co. v. Grillot Co., Inc., No. 97-228, 1998 U.S. Dist. LEXIS 8937, at *6 (E.D. La. June 12, 1998) (denying motion for attorneys' fees where defendant's actions, in issuing non-party subpoena, where not unreasonable or in bad faith); Dravo Corp. v. Liberty Mutual Ins. Co., 160 F.R.D. 123, 128-29 (D. Neb. 1995) (analyzing request for attorneys' fees under Fed. R. Civ. P. 45(c)(1) like a claimed violation of Rule 11 and finding that plaintiff's actions in issuing non-party subpoenas were not unreasonable).

      C.    **FirstEnergy's Subpoena Is Not Unduly Burdensome and META Is Not Entitled to Attorneys' Fees Associated with Responding to the Subpoena.**

Although Federal Rule of Civil Procedure 45(c)(1) does provide the Court with authority to award attorneys' fees, in its discretion, if a party requesting a subpoena acts unreasonably and subjects the subpoenaed party to undue burden or expense, that obviously is not the situation in this case. Here, as described above, FirstEnergy acted reasonably in subpoenaing META. Attorneys' fees are inappropriate in this case.

Courts have taken two approaches in analyzing motions for attorneys' fees pursuant to Federal Rule of Civil Procedure 45(c)(1). See e.g., Orgulf Transport Co., 1998 U.S. Dist. LEXIS at *4. The first approach analyzes Rule 45(c)(1) claims under an analysis similar to that undertaken in analyzing claims under Federal Rule of Civil Procedure 11. Id. Under this approach, "a party should only be sanctioned if the litigant's actions would warrant sanction

116867.2 8/25/05                                                         10

under Fed. R. Civ. P. 11." Id. In analyzing claims under the Rule 11 approach, courts consider whether subpoenas were brought for any improper purpose, such as harassment or causing unnecessary cost or delay in litigation. Id. Here, there is no evidence that FirstEnergy had any improper purpose in subpoenaing META. FirstEnergy issued its subpoena with the express purpose of recovering documents necessary for its defense in the above-captioned litigation. FirstEnergy's subpoena was not frivolous, nor was it meant to harass META or cause unnecessary delay or expense. META's claim for attorneys' fees must fail under the Rule 11 analysis.

The second approach implemented by courts in analyzing Rule 45 claims for attorneys' fees considers the reasonableness of the subpoenaing party's actions and imposes sanctions only when such actions are "patently unreasonable." Id. at 5-6. Courts will consider whether the subpoenaing party issued the subpoena in bad faith. Id. Here, FirstEnergy issued the subpoena in a good faith attempt to gather documents necessary to defending the litigation initiated by NYSEG against FirstEnergy. FirstEnergy's subpoena was substantially justified and not brought in bad faith. Moreover, FirstEnergy at all times acted reasonably with regard to the subpoena. META has failed to demonstrate that FirstEnergy's actions were "patently unreasonable" and is not entitled to attorneys' fees in this case.

### Request for Oral Argument

FirstEnergy respectfully requests oral argument regarding this matter.

### CONCLUSION

For all of the reasons stated above, FirstEnergy respectfully requests that this Court deny both META's Emergency Motion for Relief from Document Subpoena and META's request for attorneys' fees.

DATED: August 24, 2005

        COSTELLO, COONEY & FEARON, PLLC


        __s/Paul G. Ferrara_____
        Paul G. Ferrara,
        BBO# 551313
        Attorneys for Defendant FirstEnergy Corp.
        Office and Post Office Address
        Salina Place, 205 South Salina Street
        Syracuse, New York 13202-1327
        Telephone: (315) 422-1152

        SAUL EWING, LLP, of Counsel
        John F. Stoviak, Esq.
        Jane Kozinski, Esq.
        Attorneys for FirstEnergy Corp.
        Office and Post Office Address
        1500 Market Street, 38th Floor
        Centre Square West
        Philadelphia, PA  19102
        Telephone: (215) 972-1095

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS
-------------------------------------------------------

| | |
|---|---|
| NEW YORK STATE ELECTRIC & GAS CORPORATION, | MBD-05-10295-RGS |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| -vs- | |
| FIRSTENERGY CORPORATION, | |
| Defendant. | |

-------------------------------------------------------

I hereby certify that on August 25, 2005, I HAND DELIVERED, said enclosed documents, to wit, Opposition to Emergency Motion for Relief from Document Subpoena & Memorandum of Law in Support thereof and Affidavit of Paul G. Ferrara, with exhibits Annexed thereto, to the following:

E. Steven Coren, Esq.
Kerstein, Coren, Lichtenstein, Finkel, LLP
Newton-Wellesley Executive Office Park
60 Walnut Street,
Wellesley, MA 02481

DATED:   August 25, 2005

/s/ Paul G. Ferrara

**Costello, Cooney & Fearon, Esq.**
**Paul G. Ferrara, Esq.**
**BBO #551313**
**Attorneys for the Respondent.**
**Office and Post Office Address**
**205 South Salina Street**
**Syracuse, NY 13202**
**(315) 422-1152**